## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **NAUTILUS INSURANCE CORPORATION**, an Arizona Corporation,<br><br>Plaintiff,<br><br>v.<br><br>**MOUNT BACHELOR EDUCATIONAL CENTER, INC.**; **ASPEN EDUCATION GROUP, INC.**; **CRC HEALTH GROUP, INC**; **CRC HEALTH OREGON, INC.**; **MLM**, an individual proceeding under a fictitious name; **NAA**, an individual proceeding under a fictitious name; **TGB**, an individual proceeding under a fictitious name; **RB**, an individual proceeding under a fictitious name; **MST**, an individual proceeding under a fictitious name; **TL**, an individual proceeding under a fictitious name; **BPO**, an individual proceeding under a fictitious name**; NCQ**, an individual proceeding under a fictitious name; **WBL**, an individual proceeding under a fictitious name; **LF**, an individual proceeding under a fictitious name; and **Does 110-117**, individuals proceeding under fictitious names, **and Does 210-223**, individuals proceeding under fictitious names,<br><br>Defendants. | Case No. 3:12-cv-00825-SI<br><br><br>**OPINION AND ORDER** |

George J. Manos and Diane K. Ehrhart, Lewis Brisbois Bisgaard & Smith LLP, 550 West Adams Street, Ste. 300 Chicago, IL  60661; Aaron C. Denton, Prange Law Group, LLC, 111 S.W. Fifth Avenue, Ste. 2120, Portland, OR  97204. Attorneys for Plaintiff.

Barry S. Levin, Celia M. Jackson, and Alexandra L. Brandon, Orrick, Herrington & Sutcliffe LLP, The Orrick Building, 405 Howard Street, San Francisco, CA  94105-2669; Michael E. Farnell, Parsons Farnell & Grein, LLP, 1030 SW Morrison Street, Portland, OR  97205. Attorneys for Defendants Mount Bachelor Educational Center, Inc., Aspen Education Group, Inc., CRC Health Group, Inc., and CRC Health Oregon, Inc.

**SIMON, District Judge**.

Defendants Mount Bachelor Educational Center, Inc. ("Mt. Bachelor"), Aspen Education Group, Inc. ("Aspen"), CRC Health Group, Inc., and CRC Health Oregon, Inc. ("CRC") operated a therapeutic boarding school in Prineville, Oregon, called Mount Bachelor Academy (the "Academy"). Defendants MLM, NAA, TGB, RB, MST, TL, BPO, NCQ, WBL, LF, Does 110-117, and Does 210-223 are former students at the Academy (collectively, the "former students"). In 2011 and 2012, the former students filed three actions in Oregon state courts (the "State Court Actions") against Mt. Bachelor, Aspen, and CRC, alleging that the Academy's staff subjected them to physical and mental abuse. They assert claims for intentional and negligent infliction of emotional distress, battery, breach of contract, and negligence.

In 2009 and 2010, Plaintiff Nautilus Insurance Corporation ("Nautilus") issued general liability and professional liability insurance policies to Aspen, CRC, and Mt. Bachelor (collectively, the "policyholders"). In this action, Nautilus seeks a declaration that it has no duty to defend or indemnify the policyholders in the State Court Actions. In the alternative, Nautilus seeks to rescind both the general liability and professional liability policies. Before the Court are the policyholders' motions to stay this action and to transfer venue to the Northern District of California. Dkts. 14-15. For the reasons discussed below, the court grants the motion to stay and denies the motion to transfer.

## BACKGROUND

### A.    The State Court Actions

The former students are plaintiffs in the three pending Oregon State Court Actions against the policyholders: (1) *MLM v. Mount Bachelor Educational Center, Inc.*, Case No. 1107-08552, filed in Multnomah County, probably in 2011 (the "MLM Action"); (2) *LF v. Mount*

*Bachelor Educational Center, Inc.*, Case No. 1109-11909, filed in Multnomah County on

September 13, 2011 (the "LF Action"); and (3) *Doe 210 v. Mount Bachelor Educational Center,*

*Inc.*, No. 12-cv-0008, filed in Deschutes County on January 4, 2012 ("the "DOE Action"). Dkt.

41-1, 41-2, Exs. A, B, U. The LF and DOE Actions were apparently later transferred to Crook

County. *See* Amended Compl. ("FAC") at ¶ 42 (Dkt. 41).

According to the complaints in the State Court Actions, the former students were

residents at the Academy at various times between 1990 and 2008. In each of the State Court

Actions, the former students allege that they suffered "systematic psychological and physical

abuse" at the hands of the Academy's "untrained" and poorly educated staff. LF Action at ¶ 1. In

the MLM Action, for example, the former student plaintiffs allege:

> This case involves institutionalized physical and psychological child abuse at
> Mt. Bachelor Academy, a "therapeutic boarding school" for troubled teens that was
> ordered closed by the State of Oregon Department of Human Services. These Plaintiffs,
> now all adults, had their already troubled childhoods made worse by systematic physical
> and psychological abuse that goes far beyond any reasonable notion of "boot camp" or
> "tough love" schools. Defendants['] program was staffed by untrained, often only high-
> school educated counselors and instructors who attempted to psychologically break down
> and indoctrinate children in their care, typically by berating them in the harshest of terms
> and subjecting them to extreme physical conditions and deprivation.

MLM Action at ¶ 1; *see also* LF Action at ¶ 1, DOE Action at ¶ 1. The former students describe

a wide variety of "malfeasance" and "abuse":

> Plaintiff was denied basic medical rights, and run through a battery of "Lifestep"
> group encounters that ran for days at a time with no breaks, where little or no sleep was
> permitted, very little food provided, and traumatizing activities were required, such as
> making known victims of child sexual abuse act out sexual propositioning. . . .
> Defendants [the policyholders] removed students from any education activity during
> extended periods of punishment[.]

LF Action at ¶ 1; *see also* MLM Action at ¶ 1, DOE Action at ¶ 1. Based on these allegations, the former students assert claims for intentional infliction of emotional distress, negligent infliction of emotional distress, battery, breach of contract, and negligence.

In each of the State Court Actions, the former students allege that the policyholders knew about abuse occurring at the Academy. The complaints state that the policyholders "knew that [the abusive conduct] consisted of intentional conduct engaged in by their employees and agents, . . . and that it resulted in physical and mental injury to residents of Mt. Bachelor Academy[.]" DOE Action at ¶ 9; LF Action at ¶ 9; MLM Action at ¶ 9. Defendants' knowledge of the physical and mental abuse allegedly occurring at the Academy also makes up a portion of the former students' claims for relief. In each action's negligence claim, for example, the former students allege that "Defendants knew that children were suffering mental and physical abuse in the Program run by Defendants' counselors, and that several children had gone so far as to kill themselves in the course of the Program, specifically because of the Program." LF Action at ¶ 34; *see also* MLM Action at ¶ 354 (same); DOE Action at ¶ 291 (same). In the battery claims, the former students allege that "Defendants controlled the physical conduct of all of the counselors and other employees, and directed, coerced, or required both other residents and staff to physically batter Plaintiff Doe 215 as part of the 'LifeStep' program. . . . Other residents were forced under duress to participate by threat of severe punishments[.]" DOE Action at ¶ 118; *see also* LF Action at ¶ 23; MLM Action at ¶ 43.

## B.    The Insurance Policies

Nautilus issued to Aspen two professional liability policies ("PL Policy"), the first running from December 13, 2009 until December 13, 2010 ("2009 PL Policy"), and the second, a renewal of the first, running from December 13, 2010 until December 13, 2011 ("2010 PL

Policy"). FAC at ¶ 60-61. Nautilus also issued to Aspen two general liability policies ("GL policy"), each running for the same periods as the PL policies ("2009 GL Policy" and "2010 GL Policy," respectively). *Id*. Both policies obligate Nautilus to defend the policyholders against claims for covered damages and indemnify the policyholders for damages resulting from covered claims. Dkt. 41-1, Ex. E; Dkt. 41-2, Ex. F.

The 2010 PL Policy provides coverage for damages resulting from "medical professional injury." Dkt. 40-1, Ex. E. Although the 2010 PL Policy has a policy period running from December 13, 2010 until December 13, 2011, it is effective retroactively to January 1, 1998. *Id*. The 2010 PL Policy does not "apply to any 'claim' or 'suit' that the insured knew about or could have reasonably foreseen or discovered before the 'original inception date' of this coverage." FAC ¶ 64; Dkt. 40-1, Ex. E. The original inception date of the 2010 PL Policy is December 13, 2009. FAC ¶ 71, Dkt. 41-1, Ex. C.

The GL Policy provides that Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Dkt. 42-2, Ex. F. The GL Policy only covers "'bodily injury' … [that] occurs during the policy period[.]" FAC ¶ 67; Dkt. 42-2, Ex. F. Unlike the PL Policy, the GL Policy does not have a retroactive effective date.

In the present action, Nautilus seeks a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, that the insurance policies do not cover the claims raised in the State Court Actions and, therefore, that Nautilus has no duty to defend or indemnify the policyholders in those lawsuits. In the alternative, Nautilus seeks a declaration that the 2010 PL and GL policies are null and void.

## DISCUSSION

### A.    Jurisdiction

District courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act[.]" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Thus, even where subject matter jurisdiction is properly established based on diversity of the parties, "a district court may decline to exercise jurisdiction over a declaratory action." *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1166 (9th Cir. 1998) (per curiam). Although the district court need not *sua sponte* address whether to exercise jurisdiction over a declaratory action, "the preferable practice is for the district court expressly to consider whether a properly filed declaratory judgment action should be entertained and to record its reasons for doing so." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1226 (9th Cir. 1998).

In *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942), and its progeny, the Supreme Court identified several factors that a district court should analyze when considering whether to exercise jurisdiction over a declaratory judgment action when a related case is pending in state court. The three primary factors are: (1) avoiding needless determination of state law issues; (2) discouraging forum shopping; and (3) avoiding duplicative litigation. *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011). There "is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Dizol*, 133 F.3d at 1225.

These factors favor exercising jurisdiction. The first factor requires the court to avoid needless determination of state law issues. Regulation of insurance and the interpretation of contracts are governed by state law. There is no question, therefore, that the present case will require the court to determine state law issues. Even so, these determinations are necessary here

because Nautilus is not a party to the State Court Actions and the coverage disputes raised in this action will not be addressed in the State Court Actions.

Under the second factor, the court must discourage forum shopping. "This factor usually is understood to favor discouraging an insurer from forum shopping, *i.e.*, filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." *Am. Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999). Here, however, Nautilus is not a party to the State Court Actions and, therefore, is not seeking a more favorable federal forum.

The last factor requires the court to avoid duplicative litigation. The court should avoid entertaining a declaratory judgment action that "is virtually the mirror image of the state suit." *See Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1373 (9th Cir. 1991), *overruled on other grounds by Dizol*, 133 F.3d at 1227. Although this action is similar to the State Court Actions, the legal questions here—which concern the existence and scope of insurance coverage—are distinct from the legal questions raised in the State Court Actions—which concern tort and contract liability. Moreover, Nautilus is not a party to the State Court Actions. Accordingly, this action is not a mirror image of the state court suits. On balance, the *Brillhart* factors favor retaining jurisdiction.[1]

---

[1] One other factor warrants this Court exercising jurisdiction. Although styled as a request for declaratory relief (*see* FAC caption), Nautilus's count V more closely resembles a claim for rescission than a claim for declaratory relief. In general, a federal district court should not decline jurisdiction where a plaintiff makes a rescission claim in addition to declaratory relief claims. *Dizol*, 133 F.3d at 1225 ("when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief").

**B.      Motion to Stay**

The power to stay proceedings is inherent to the court. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). When determining whether a stay is warranted, the court must balance the hardship to the moving party if the stay is not granted against prejudice to the non-moving party if it is. *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (balancing interests between parties). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. Although the *Brillhart* factors discussed above favor retaining jurisdiction to hear this case, other factors particular to this case, discussed below, favor staying this case during the pendency of the state court action.

**1.      Choice of law**

Nautilus's complaint asks the Court to interpret two insurance policies or, in the alternative, to rescind those policies. State law governs the interpretation of insurance contracts and claims for rescission. *Humboldt Bank v. Gulf Ins. Co.*, 323 F. Supp. 2d 1027, 1032 (N.D. Cal. 2004), *aff'd*, 189 F. App'x 645 (9th Cir. 2006) ("Construction of an insurance policy is governed by state law."); Cal. Ins. Code §§ 331, 359 (rescission); Or. Rev. Stat. § 742.013 (rescission). Thus, the court must begin by deciding which state's law to apply.

A federal district court sitting in diversity applies the choice-of-law rules of the forum state. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (*per curiam*). Under Oregon law, the court "first look[s] to whether there is a material difference between Oregon substantive law and the law of the other forum. If there is no material difference—if there is a 'false conflict'—Oregon law applies." *Angelini v. Delaney*, 156 Or. App. 293, 300-01 (1998). "The

proponent of the law of another forum has the obligation to identify material differences between the applicable law of Oregon and of the other forum." *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or. App. 295, 301, 157 P.3d 1194, 1198 (2007). "If there is a material difference between the two states' laws, then [the court] appl[ies] the 'most significant relationship' test to determine which jurisdiction's law applies." *Pereira v. Thompson*, 230 Or. App. 640, 670 n.6 (2009).

The Defendant policyholders contend that the Court should apply California law. Defs.' Mem. in Support of Mot. to Stay at 15 (Dkt. 16). The policyholders have, however, failed to identify a single material difference between Oregon and California law, with respect to either the interpretation of insurance policies or to the statutory basis for rescission. Nautilus contends that, in fact, there are no material differences. Pl.'s Opp'n to Mot. to Stay at 13 (Dkt. 34). Because the policyholders have failed to meet their burden to demonstrate any material differences, the Court applies Oregon law. It "is not [the Court's] obligation to cast around the law of California in quest of possible material differences." *Angelini*, 156 Or. App. at 300.

### 2.    Oregon insurance coverage law

As described above, the PL and GL Policies ascribe to Nautilus two duties: a duty to defend the policyholders from claims or suits covered by the policies and a duty to indemnify the policyholders for damages resulting from claims or suits covered by the policies. Under Oregon law, "the duty to defend is different from the duty to indemnify[.]" *Nw. Pump & Equip. Co. v. Am. States Ins. Co.*, 144 Or. App. 222, 227 (1996). To determine whether an insurer has a duty to defend its policyholders from a claim, "the court looks *only* at the facts alleged in the [underlying] complaint to determine whether they provide a basis for recovery that could be covered by the policy[.]" *Ledford v. Gutoski*, 319 Or. 397, 400, 877 P.2d 80, 82 (1994)

(emphasis added). The duty to indemnify, in contrast, "is established by proof of actual facts demonstrating a right to coverage."[2] *Nw. Pump & Equip.*, 144 Or. App. at 227.

The extent to which parties may litigate a coverage dispute in a declaratory action during the pendency of an underlying tort action differs depending on which of the insurer's duties are at issue. The insurer may litigate its duty to defend in a declaratory action if it relies only on the facts alleged in the underlying complaint and the terms of the insurance contact.[3] *See Allstate Ins. Co. v. Staten*, No. Civ. 07-125-CL, 2007 WL 3047219 (D. Or. Oct. 17, 2007) (finding that the court could resolve the duty to defend during pendency of the underlying action because the insurer relied only on the complaint and the insurance contract). The insurer may not, however, develop any evidence in a declaratory action that negates its duty to defend the underlying action.[4] *N. Pac. Ins. Co. v. Wilson's Distrib. Serv., Inc.*, 138 Or. App. 166, 174 (1995) ("*North Pacific*").

---

[2]  The duty to indemnify "is independent of the duty to defend. . . . Even when an insurer does not have a duty to defend based on the allegations in the initial complaint, the facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered." *Ledford*, 319 Or. at 403 (internal citation omitted); *see also Nw. Pump*, 144 Or. App. at 227 ("breach of one does not, in and of itself, establish the breach of the other").

[3]  In *N. Pac. Ins. Co. v. Wilson's Distrib. Serv., Inc.*, 138 Or. App. 166, 174 (1995), the Oregon Court of Appeals held that "as a matter of law, [the insurer] was not entitled to a declaration in this [declaratory action] proceeding that it was not required to defend [its policyholder] in the underlying tort action." In that case, however, the Court of Appeals was primarily addressing whether the insurer could develop facts in a declaratory action challenging the duty to defend during the pendency of an underlying tort action. The Court of Appeals did not consider whether the insurer could challenge the duty to defend during the pendency of the underlying tort action based solely on the complaint in the underlying action and the terms of the insurance policy. This Court agrees with the district court in *Allstate Ins. Co. v. Staten*, No. Civ. 07-125-CL, 2007 WL 3047219 (D. Or. Oct. 17, 2007), that such a challenge is not unfairly prejudicial to the policyholder and is permissible under Oregon law.

[4]  There is an exception to this general rule. In *North Pacific*, the Oregon Court of Appeals suggested that the insurer could rely on facts that had been "incontrovertibly established in a separate proceeding" that had already concluded. 138 Or. App. at 172-175; *see also Oregon Ins. Guar. Ass'n v. Thompson*, 93 Or. App. 5 (1988). Similar circumstances are not present here.

The duty to indemnify presents a more complex question. As noted above, under Oregon law an insurer's duty to indemnify a policyholder "is established by *proof of actual facts* demonstrating a right to coverage." *Nw. Pump & Equip.*, 144 Or. App. at 227 (emphasis added). This, however, creates a potential conflict when a declaratory action is brought during the pendency of an underlying tort action. In many cases, the same facts at issue in the underlying tort action may also be at issue in the declaratory action. For this reason, most courts "place restrictions on the use of a declaratory relief claim to resolve facts during the pendency of an underlying claim if those same facts are at issue in—or could prejudice the policyholder in—the defense of the underlying claim[.]" 1 Jeffrey E. Thomas, NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 7.05[1] (LexisNexis 2012) ("Appleman"). The only Oregon appellate decision to address the propriety of staying a declaratory action contesting the duty to indemnify during an underlying tort action appears to be *North Pacific*. In that case, the Court of Appeals held that a stay was required where the insurer's declaratory action put the policyholders in "the conflictive position of being required to abandon their denial of liability in [the underlying] action in order to come within the" insurance policy coverage in the declaratory action. 323 Or. App. at 175.

*North Pacific* held that a stay was appropriate solely because the declaratory action placed the policyholder in a "conflictive position." Other courts and authorities have identified several other factors that warrant staying a declaratory action. These include the "possible collateral estoppel effect of the coverage ruling in the underlying case, the possible interference with the other court proceeding, judicial economy, and the burden and possible prejudice to the policyholder arising from having to litigate on two fronts." Appleman at § 7.05[4][c]. In addition, "information obtained in the coverage action might subsequently be used against the

insured when the underlying claims are subsequently litigated." *Evraz Oregon Steel Mills, Inc. v. Cont'l Ins. Co.*, No. 08-cv-447-JE, 2009 WL 789658 (D. Or. Mar. 20, 2009). As Judge Posner observed, factors like these confirm "the good sense of the general rule that the insurer's declaratory judgment suit is not a proper vehicle for resolving factual issues in the underlying suit against the insured." *Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1003 (7th Cir. 1996).

### 3.   Application to Nautilus's claims

In the present action, Nautilus asserts five counts. In the first four counts, Nautilus alleges that the PL and GL policies do not cover the claims raised in the State Court Actions and, therefore, Nautilus has no duty to defend or indemnify the policyholders in those actions. In the fifth count, Nautilus seeks a declaration that the 2010 PL and GL policies are null and void. Despite the important distinction between the duty to defend and the duty to indemnify discussed above, Nautilus's first four counts do not separately address the duty to defend and the duty to indemnify. FAC ¶¶ 86, 93, 103, 107.

In its first claim, Nautilus alleges that it has no duty to defend or indemnify the policyholders because the PL policy precludes coverage "for any 'claim' or 'suit' that the insured knew about or could have reasonably foreseen or discovered" before the original inception date of the coverage. FAC ¶ 70. In its second claim, Nautilus alleges that it has no duty to defend or indemnify the policyholders because the policyholders' "knowledge of the alleged bodily injuries prior to the inception of the [2010] GL policy precludes coverage for such injuries[.]" FAC ¶ 92.

As Nautilus has pleaded counts I and II, they depend on establishing that the policyholders knew of the abuse occurring at the Academy before the original inception dates of

the insurance policies.[5] The extent of the policyholders' knowledge about the abuse alleged to have occurred at the Academy is, however, also a factual issue in the state court lawsuits. Permitting these counts to go forward would expose the policyholders to fact discovery on the same or similar issues in two separate lawsuits. In addition, factual decisions made by this Court in this case could collaterally estop the policyholders or the former students from re-litigating the same issues in the State Court Actions. The court finds, therefore, that permitting counts I and II to go forward at this time would prejudice the policyholders in the State Court Actions. Accordingly, these counts are stayed.

In counts III and IV, Nautilus alleges that sexual and physical abuse endorsements added to the PL and GL policies preclude coverage. An endorsement to the GL Policy in April 2011 excludes from coverage:

> Any "claim" or "suit" based on or arising out of, an actual, alleged or threatened sexual (i) misconduct, (ii) mistreatment, (iii) maltreatment, or (iv) molestation, physical or mental assault, physical or mental abuse, battery, corporal punishment, improper touching, or other licentious behavior, regardless of consent, whether committed or alleged to have been committed by an insured or any other person for whom the insured is legally responsible.

Dkt. 41, Ex. H; *see* FAC ¶68. A similar endorsement was made to the 2010 PL Policy, excluding any claim or suit arising out of:

---

[5]   At oral argument, Nautilus suggested that count II alleges that the GL policy does not cover the policyholders in the State Court Actions for two reasons: First because the policyholders' prior knowledge precludes coverage under the GL policy and second because the GL policy does not cover bodily injury outside of the policy period and any bodily injury alleged in the State Court Actions happened before the beginning of the policy period. As drafted, however, count II appears only to make the prior knowledge allegation. In fact, count II is titled "Prior Knowledge of Bodily Injury Precludes Coverage under the 2010-2011 Nautilus GL Policy"). If Nautilus wishes also to allege that the GL policy does not cover the bodily injuries alleged in the State Court Actions because the alleged abuse occurred before the GL policy period, it must replead.

1.  physical (i) assault, (ii) abuse, (iii) mistreatment, (iv) maltreatment, or (v) molestation, or habitual or intentional negligent, or licentious immoral, amoral or other similar behavior that was committed or alleged to have been committed by any insured or by any person, for whom the insured is legally responsible; and/or

2.  sexual (i) assault, (ii) abuse, (iii) misconduct, (iv) mistreatment, (v) maltreatment, or (vi) molestation, or licentious immoral, amoral or other similar behavior which was threatened, intended to, lead to or culminated in, any sexual act, whether committed intentionally, negligently, inadvertently, or with the belief, erroneous or otherwise, that the other party is consenting and has the legal and mental capacity to consent thereto, that was committed, or alleged to have been committed, by any insured or any person for whom the insured is legally responsible.

Dkt. 41, Ex. G; *see* FAC ¶ 65. Nautilus asserts that these endorsements preclude any coverage for the State Court Actions.

As described above, the State Court Actions allege a variety of malfeasance and abuse, including denial of "medical rights," deprivation of food and sleep, forced participation in "traumatizing" activities, and removal from educational programs. The extent to which Nautilus can establish, in counts III and IV, that it has no duty to indemnify the policyholders is dependent on proof of actual facts establishing nature of the abuse, if any, that occurred at the Academy. Developing those facts in this action, however, would expose the policyholders to fact discovery on similar issues in two separate lawsuits and potentially collaterally estop re-litigation of the same factual questions in the State Court Actions. For the same reasons that counts I and II are stayed, therefore, the Court also stays counts III and IV.[6]

---

[6] As noted above, Nautilus does not distinguish between the duty to defend and the duty to indemnify in its counts. In counts III and IV, Nautilus may be able to contest its duty to defend the state actions by relying on only the complaints in the State Court Actions and the terms of the PL and GL policies. To do so, however, Nautilus must replead its complaint to make this clear. Nautilus should also bear in mind that when a complaint "contains allegations of conduct for which the policy provides coverage, the insurer has a duty to defend even if the complaint also contains allegations of excluded conduct." *State Farm Fire & Cas. Co. v. Am. Family Mut. Ins. Co.*, 242 Or. App. 60, 63-64 (2011).

In count V, Nautilus does not ask the Court to address the scope of Nautilus's duties under the PL and GL policies. Instead, Nautilus asks the Court to rescind the PL and GL policies based on alleged misrepresentation.[7] Nautilus alleges that the policyholders "did not disclose the fact that Mt. Bachelor had been investigated by the State of Oregon or that its license had been permanently suspended on the application." FAC ¶ 112. Nautilus also alleges that it "would have altered its underwriting had it known the facts and information misrepresented by the failure to disclose the investigation and the numerous negative media reports." FAC ¶118. The policyholders respond that count V depends on establishing what the policyholders "knew in connection with the [state's] investigation, whether they were aware of the media reports allegedly not disclosed and what information was ultimately known to Nautilus at the time it issued its policy." Defs.' Reply at 11 (Dkt. 43).

Rescission of an insurance contract under Oregon law is governed in part by statute. Or. Rev. Stat. § 742.013(1) provides:

> Misrepresentations, omissions, concealments of facts and incorrect statements shall not prevent a recovery under the policy unless the misrepresentations, omissions, concealments of fact and incorrect statements:
>
> > (a) Are contained in a written application for the insurance policy, and a copy of the application is indorsed upon or attached to the insurance policy when issued;
> >
> > (b) Are shown by the insurer to be material, and the insurer also shows reliance thereon; and
> >
> > (c) Are either:
> >
> > > (A) Fraudulent; or
> > >
> > > (B) Material either to the acceptance of the risk or to the hazard assumed by the insurer.

---

[7] Although Nautilus asks the Court to declare both the PL and GL polices "null and void," count V quotes from and describes only the policyholders' application for the PL policy.

Oregon appellate courts have held that to show that a statement is a "misrepresentation" for the purposes of Or. Rev. Stat. § 742.013 the insurer must show that the policyholder "either knowingly made false representations, or recklessly made false representations without any knowledge as to whether they were true or false." *Story v. Safeco Life Ins. Co.*, 179 Or. App. 688, 693 (2002) (quoting *Progressive Specialty Ins. Co. v. Carter*, 126 Or. App. 236, 241-42 (1994)).

Given this framework for evaluating whether an insurer may rescind a policy, Nautilus cannot demonstrate that the policyholders made knowingly or recklessly false representations without conducting discovery into when the policyholders became aware of the state's investigation. Information revealed in that sort of discovery could be used by the former students, who are parties to this action, to attempt to establish liability in the State Court Actions. In addition, as noted at oral argument, the policyholders may wish to argue, in response to count V, that the state's investigation was meritless and, therefore, irrelevant to the PL policy and GL policy applications. Such a defense would, however, permit Nautilus to conduct discovery into the basis for the state's investigation into Mt. Bachelor, which would likely cover the same factual issues present in the State Court Actions. Permitting count V to proceed would, therefore, potentially prejudice the policyholder's defense of the State Court Actions. Accordingly, count V is stayed.

The Court is cognizant that Nautilus "may be prejudiced by having to pay defense costs in a case where there may be no duty to defend if the stay is granted." *Cont'l Cas. Co. v. Global Allies, LLC*, 2:11-CV-03237-MCE, 2012 WL 5289315 (E.D. Cal. Oct. 24, 2012) (internal quotation marks and citation omitted). Nonetheless, on balance, the Court finds that the potential prejudice to the policyholders outweighs the prejudice to Nautilus. If the Court does not stay this

action, the policyholders will be forced to fight a "two-front war" against both the former

students and its insurer; the policyholders will be exposed to similar discovery in several separate

actions; and the policyholders and the former students may be collaterally estopped from

litigating overlapping factual issues.

If, however, Nautilus wishes to replead its complaint so that all or some counts challenge

*only* its duty to defend, and does so *only* on the basis of the facts alleged in the underlying

complaints in the State Court Actions and the terms of the PL and GL policies, it may do so. If

Nautilus chooses to do so, Nautilus may concurrently file a motion partially to lift the stay.

**C.    Motion to Transfer**

The policyholders alternatively move to transfer venue to the Northern District of

California. Dkts. 15-16. Transfers of venue between federal district courts are provided for in 28

U.S.C. § 1404(a). That statute states:

> For the convenience of parties and witnesses, in the interest of justice, a district court
> may transfer any civil action to any other district or division where it might have been
> brought or to any district or division to which all parties have consented.

The "purpose of [§ 1404(a)] is to prevent the waste of time, energy and money and to protect

litigants, witnesses and the public against unnecessary inconvenience and expense[.]"*Van Dusen*

*v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks and citation omitted).

District courts use "a two-step analysis to determine whether a transfer is proper." *Roling*

*v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1184 (N.D. Cal. 2010). The first step "requires the

court to determine whether the case could have been brought in the forum to which the transfer is

sought." *Id*. In this case, the parties agree that this case could have been brought in the Northern

District of California. Pl.'s Opp'n to Mot. to Transfer at 2 (Dkt. 34).

The second step requires the court to weigh whether the interests of convenience and justice warrant a transfer. The Ninth Circuit has held that this inquiry involves an "individualized, case-by-case consideration" of several factors:

> [T]he court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis. We also conclude that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (internal quotation marks and footnotes omitted).

The policyholders contend that convenience and justice requires this Court to transfer this action to the Northern District of California. They argue that California law governs this case and California courts are more familiar with California law. Defs.' Mem. in Support of Mot. to Transfer at 10-12 (Dkt. 17). The policyholders also argue that California has a greater interest in resolving an insurance dispute that concerns California companies. *Id.* at 12-13. Finally, the policyholders argue that the Northern District of California is a more appropriate venue because most of the relevant documents and witnesses are located in California. *Id.* at 13-15. In response, Nautilus argues that its choice of forum is entitled to deference; Oregon law, not California law, applies; and even if California law applies, this Court is competent to apply it. Pl.'s Opp'n to Mot. to Transfer at 2-7 (Dkt. 34).

For several reasons, the Court finds that in the interest of convenience and justice, this case should not be transferred. First, as discussed above, the policyholders have failed to establish that California law will apply in this case. Second, Nautilus's choice of forum is

entitled to some deference. Although Oregon is not Nautilus's home forum, Oregon is not an inconvenient forum. *See In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (practice of deferring to plaintiff's choice of forum "is based on an assumption that the plaintiff's choice will be a convenient one"). The State Court Actions, which are the subject of the present dispute, are all taking place in Oregon and the ultimate resolution of this action may be affected by the resolution of those actions. Moreover, the Academy was based in Oregon and Defendants Mt. Bachelor Educational Center, Inc., and CRC Health Oregon, Inc. are Oregon corporations. FAC ¶¶ 2, 5. Oregon is not far, relatively, from Cupertino, California, the location of Defendant Aspen Educational Group, Inc.'s corporate headquarters. *See* Burke Decl. at ¶ 3 (Dkt. 18).

Third, although California has an interest in this action because Aspen is a California corporation, Oregon also has an interest. As noted, Mt. Bachelor and CRC Health Oregon are Oregon corporations. Fourth, although documents may be located in the Northern District of California, this factor is of little weight today when interstate transmission of documents in an electronic format over the internet can be accomplished with ease and at little cost. *Marcus v. Am. Contract Bridge League*, 562 F. Supp. 2d 360, 366 (D. Conn. 2008) ("the location of the relevant documents is a non-issue in today's world because copy machines, electronic discovery, and emails make it much easier to obtain documents at a distance"). Finally, because this case primarily involves contract interpretation, it is unlikely that many witnesses will be necessary. In the event that California witnesses will be called, they will be, relatively, not far from Oregon. Accordingly, the Court declines to transfer this action.

## CONCLUSION

The policyholders' motion to stay, Dkt. 14, is **GRANTED**. The policyholders and Nautilus must submit joint status reports describing the progress of the State Court Actions every six months, beginning six months from the date of this Order, during the pendency of this stay. The policyholders' motion to transfer, Dkt. 15, is **DENIED**. Nautilus has leave to file an amended complaint and a motion partially to lift the stay at any time during the pendency of the stay.

IT IS SO ORDERED.

Dated this 21st day of December, 2012.


/s/ Michael H. Simon
Michael H. Simon
United States District Judge